964 So.2d 261 (2007)
WINN-DIXIE STORES, INC., a Florida corporation, Appellant,
v.
DOLGENCORP, INC., a Kentucky corporation, and Crest Haven, L.L.C., a foreign limited liability company, Appellees.
No. 4D06-1585.
District Court of Appeal of Florida, Fourth District.
September 19, 2007.
*262 Thomas E. Warner, Dean A. Morande, and Jason Alderman of Carlton Fields, P.A., West Palm Beach, for appellant.
Tod Aronovitz and Christopher Marlowe of Aronovitz Trial Lawyers, Miami, and William N. Withrow, Jr. and Andrea D. Seeney of Troutman Sanders, LLP, Atlanta, Georgia, for appellee Dolgencorp, Inc., a Kentucky corporation.
Monterey Campbell, Mark N. Miller, and Kristie Hatcher-Bolin of GrayRobinson, P.A., Lakeland, for amicus curiae Publix Super Markets, Inc., and The Food Marketing Institute.
Douglas C. Spears, Todd K. Norman, and Donald T. Regan, III of Stump, Callahan, Dietrich & Spears, P.A., Orlando, for amicus curiae Family Dollar Stores of Florida, Inc.

ON MOTION FOR REHEARING
GROSS, J.
We grant Winn-Dixie Stores, Inc.'s motion for rehearing, withdraw our previous opinion, and substitute the following.
In the circuit court, Winn-Dixie Stores, Inc. brought suit to enjoin Dolgencorp, Inc., another tenant in a shopping plaza, from selling groceries. Winn-Dixie based its suit upon a covenant in its recorded lease with the landlord giving it the exclusive right to sell groceries in the plaza. The circuit court granted summary final judgment in favor of Dolgencorp. We reverse, holding that if we view the evidence in the light most favorable to Winn-Dixie, the covenant in its lease was one running with the land that was enforceable against Dolgencorp.
We state the facts in the light most favorable to Winn-Dixie, the non-moving *263 party in the summary judgment below. See Byrd v. BT Foods, Inc., 948 So.2d 921, 923 (Fla. 4th DCA 2007).
Winn-Dixie operates a grocery store at the Crest Haven Shopping Plaza, where it is the anchor tenant. An anchor tenant in a shopping center is one that provides a benefit to the center and its tenants by attracting customers.
In March, 1996, the landlord and Winn-Dixie entered into a lease which granted Winn-Dixie the exclusive right to sell groceries at Crest Haven, with the exception that other stores could sell groceries, provided that they devoted no more than 500 square feet to such items. Paragraph 33 of the lease provided that all the provisions in the lease, including Winn-Dixie's grocery exclusive, were "deemed" to be covenants that ran with the land:
This lease and all of the covenants and provisions thereof shall inure to the benefit of and be binding upon the heirs, legal representatives, successors and assigns of the parties hereto. Each provision hereof shall be deemed both a covenant and a condition and shall run with the land.
A short form of the lease, containing a legal description of the shopping plaza and the grocery exclusive, was recorded on April 23, 1996 in the public records of Palm Beach County, Florida. The recorded short form lease appears in the chain of title for the Crest Haven Shopping Plaza.
Shopping plaza exclusives similar to Winn-Dixie's are customary and standard throughout the industry, especially with regard to anchor tenants. Sophisticated tenants such as Winn-Dixie and Dolgencorp encounter exclusives in almost every shopping center in which they do business. Dolgencorp knew that Winn-Dixie stores typically operated under grocery store exclusives.
In 1998, Dolgencorp became a tenant at Crest Haven and began operating a Dollar General Store. Dolgencorp operates 7,800 Dollar General Stores in 32 states. Dolgencorp's lease contained a provision granting it the exclusive right to operate a Dollar General type of store at the shopping plaza.
Winn-Dixie learned that Dolgencorp was violating its grocery exclusive by devoting more than 500 square feet of sales area to grocery items. Winn-Dixie demanded that the landlord enforce the grocery exclusivity provision, but the landlord failed to do so. Winn-Dixie filed a complaint against the landlord and Dolgencorp seeking injunctive relief, specific performance, damages for breach of contract, and unjust enrichment.[1]
Dolgencorp moved for summary judgment, arguing that section 542.335, Florida Statutes (1998) rendered the grocery exclusive unenforceable against it because Dolgencorp was not a signatory to Winn-Dixie's lease. The trial court granted the motion, holding that Winn-Dixie's grocery exclusive was not a real property covenant that ran with the land, that Dolgencorp did not have constructive notice of the grocery exclusive under Florida law, and that section 542.335 rendered the grocery exclusive unenforceable.
Concerning appellate review of a summary judgment, we have held that
[a]n order granting summary judgment is reviewed de novo. Summary judgment is proper only when there are no genuine issues of material fact conclusively shown from the record and the movant is entitled to judgment as a matter of law. All doubts and inferences *264 must be resolved against the moving party, and if there is the slightest doubt or conflict in the evidence, then summary judgment is not available. An issue of fact is `material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case.
Byrd, 948 So.2d at 923 (internal citations omitted).

The Grocery Exclusive in the Lease was a Real Property Covenant that Ran With the Land
Winn Dixie's grocery exclusive was a real property covenant that ran with the land and not a personal contract obligation. The distinction between the two is well established in Florida law.
We explained the difference between a covenant running with the land and a personal covenant in Alternative Networking, Inc. v. Solid Waste Authority of Palm Beach County, 758 So.2d 1209, 1211 (Fla. 4th DCA 2000):
"A personal covenant creates a personal obligation or right enforceable at law only between the original covenanting parties whereas a real covenant creates a servitude upon reality for the benefit of another parcel of land. A real covenant binds the heirs and assigns of the original covenantor, while a personal covenant does not." A covenant running with the land differs from a merely personal covenant in that the former concerns the property conveyed and the occupation and enjoyment thereof, whereas the latter covenant is collateral or is not immediately concerned with the property granted. If the performance of the covenant must touch and involve the land or some right or easement annexed and appurtenant thereto, and tends necessarily to enhance the value of the property or renders it more convenient and beneficial to the owner, it is a covenant running with the land.
(quoting Palm Beach Cty. v. Cove Club Investors, Ltd., 734 So.2d 379, 382 n. 4 (Fla.1999) (quoting 19 FLA. JUR.2D DEEDS § 174 (1998), and Maule Indus., Inc. v. Sheffield Steel Prods., Inc., 105 So.2d 798, 801 (Fla. 3d DCA 1958))).
Florida courts have long enforced use restrictions in commercial leases as covenants running with the land.
In Dunn v. Barton, 16 Fla. 765 (1878), John Dunn, the assignee of a tenant in a commercial lease, assigned the lease to Mary Barton, who agreed not to permit the leased premises to be used as a "public bar-room." Dunn owned a bar in an adjoining building and he sought to limit competition. Barton sublet to Annie Hazelton, who began to operate a bar. Dunn sued Barton and Hazelton to enforce his agreement with Barton. Id. at 770.
The supreme court characterized the Dunn/Barton use restriction as covenant which ran with the land, because it affected "the mode of enjoyment of the premises." Id. at 771. The court also held that the covenant was enforceable against Hazelton, who, as a sublessee, was "subject to the covenants running with the land in the hands of her lessor," Barton. Id. at 772. The supreme court applied the rule that a lease "restriction upon the manner of using the premises runs with the land and is binding upon the estate in the hands of sub-tenants . . . [who] take only the title of the lessee, and with the title, limitations and restrictions." Id. at 772 (quoting Wheeler v. Earle, 59 Mass. 31 (1849)).
More recently, in Park Avenue BBQ & Grille of Wellington, Inc. v. Coaches Corner, Inc., 746 So.2d 480 (Fla. 4th DCA 1999), this court enforced a use restriction in one tenant's commercial lease against another tenant of a shopping center. *265 There, the landlord granted a lease exclusive to a sports bar to be the only TV sports bar in the shopping center. Id. at 481. The lease exclusive was recorded in the public records when the landlord conveyed the shopping center to a new owner. Id. at 482. Later the shopping center leased space to a barbeque restaurant that began showing televised sporting events. The sports bar obtained an injunction against the shopping center and the restaurant enforcing its lease exclusive. Id. On appeal, the restaurant argued that it was not bound by the sports bar exclusive because it was not in direct contractual privity with the sports bar. This court affirmed the injunction, rejecting the argument that privity was a requirement to enforce a covenant running with the land, in light of the restaurant's actual knowledge of the restrictive covenant. Id. 482.
From the Florida cases, we extract the following rule: to establish a valid and enforceable covenant running with the land arising from a landlord-tenant relationship, a plaintiff must show (1) the existence of a covenant that touches and involves the land, (2) an intention that the covenant run with the land, and (3) notice of the restriction on the part of the party against whom enforcement is sought. See Maule Indus., 105 So.2d at 801; Park Avenue BBQ, 746 So.2d at 481-82; Alternative Networking, 758 So.2d at 1211; see also RALPH E. BOYER, SURVEY OF THE LAW OF PROPERTY 530 (3d ed.1981).
The grocery exclusive in this case was a covenant that "touched and involved" the land. Under Dunn and Park Avenue BBQ  the grocery exclusive "affects the mode of enjoyment of the premises." Dunn, 16 Fla. at 771.
The intent that the use restriction run with the land was expressed in paragraph 33 of the lease, which "deems" its provisions to be covenants that run with the land.
Finally, Dolgencorp had sufficient notice of the grocery exclusive so that Winn-Dixie could bring an enforcement action against it.
Florida recognizes three types of notice in cases concerning covenants running with the land  constructive notice, actual notice, or implied actual notice. This record supports the conclusion that Dolgencorp had either constructive or implied actual notice of Winn Dixie's lease exclusive.
"`Constructive notice' has been defined as notice imputed to a person not having actual notice." Sapp v. Warner, 105 Fla. 245, 255, 141 So. 124, 127 (1932). "The usual instance of constructive notice, is of course, restrictions in a recorded deed or plat. And the authorities are practically unanimous in holding that the recorded deed containing such restriction is not necessarily the immediate deed by which the instant owner takes or has taken title; it may be in an antecedent deed, even the deed from the original common grantor." Hagan v. Sabal Palms, Inc., 186 So.2d 302, 311-312 (Fla. 2d DCA 1966).
Park Avenue BBQ is an actual notice case. The barbeque restaurant had actual knowledge of the sports bar's exclusivity provision; the restaurant's president "hand wrote language into his lease allowing [the restaurant] to televise sporting events because he was concerned about [the sports bar's] exclusivity provision." 746 So.2d at 482. Actual or "express" notice is based on "direct information" leading to "actual knowledge of the fact in question." Sapp, 141 So. at 127; McCausland v. Davis, 204 So.2d 334, 335 (Fla. 2d DCA 1967).
Implied actual notice includes "notice inferred from the fact that the *266 person had means of knowledge, which it was his duty to use and which he did not use." Sapp, 105 Fla. at 255, 141 So. 124. If a person has information that would lead a reasonable man to make further inquiry for his own protection, but fails to further investigate and learn what the inquiry would reasonably have uncovered, the person "must suffer the consequence of his neglect." Flanigan's Enters., Inc. v. Shoppes at 18th & Commercial, Inc., 954 So.2d 758 (Fla. 4th DCA 2007) (quoting Chatlos v. McPherson, 95 So.2d 506, 509 (Fla.1957)); Rafkind v. Beer, 426 So.2d 1097, 1099 (Fla. 3d DCA 1983); see also Citgo Petroleum Corp. v. Fla. E. Coast Ry. Co., 706 So.2d 383, 386 (Fla. 4th DCA 1998) (citing Chatlos). Implied actual notice is based upon the principle
that a person has no right to shut his eyes or ears to avoid information, and then say that he has no notice; that it will not suffice the law to remain willfully ignorant of a thing readily ascertainable by whatever party puts him on inquiry, when the means of knowledge is at hand.
Sapp, 141 So. at 127.
Based on this record, Dolgencorp had at least implied actual notice of the grocery exclusive when it entered into its lease. Dolgencorp was an experienced commercial tenant with 7,800 stores in 32 states, most of which are located in shopping plazas; it often sought exclusives in its own leases and secured one from Crest Haven. Dolgencorp understood that Winn-Dixie was the anchor tenant at Crest Haven. Dolgencorp was aware that anchor tenants like Winn-Dixie typically secure restrictive covenants in shopping center leases. Under these circumstances, Dolgencorp had the obligation to make further inquiry of the landlord or Winn-Dixie or to examine the shopping center's chain of title to see if Winn-Dixie had recorded its grocery exclusive. In sum, Dolgencorp had reason to know of the existence of Winn-Dixie's restrictive covenant.
In the circuit court, Dolgencorp relied upon Camena Investments & Property Management Corp. v. Cross, 791 So.2d 595 (Fla. 3d DCA 2001). That case is inapplicable to the issue of implied actual notice. Camena concerned a claim that a lessor had fraudulently induced a lessee to enter into a lease by representing that the lessee could open a restaurant by a certain date; however, a recorded restrictive covenant on the property made such an opening impossible. The lessor took the position that there could be no fraud because the "restrictive covenant was a matter of public record." Id. at 597. The third district rejected this argument and wrote in dicta that public records searches for restrictive covenants were not the "types of searches . . . expected to be performed as standard procedure by a party entering into a commercial lease." The obligation that the law places on a lessee to maintain a cause of action for fraudulent inducement is different than the obligation placed on an experienced commercial lessee to inquire about restrictive covenants that would place limitations on its tenancy. Camena stands only for the proposition that in the appropriate case, a fact appearing in public records, if it is misrepresented, may still form the basis of a fraud claim.
Moving away from implied actual notice, the more difficult issue is whether Winn-Dixie's recording of the short form lease gave Dolgencorp constructive notice of the grocery exclusive sufficient to enforce the covenant against it.
Three statutes pertain to instruments as notice. Section 28.222(3)(a), Florida Statutes (2006) provides that leases are one kind of instrument that the clerk of the circuit court is required to record. Section 695.11, Florida Statutes (2006) states that *267 an instrument, like a lease, which is "authorized or required to be recorded" by the clerk "shall be notice to all persons" once it is "officially recorded" pursuant to the statute. We read the "notice" provision of section 695.11 as a general description of the legal effect of recording, rather than as a statement that recording operates as notice to all persons, in all situations. Most significant is the third statute, which describes the effect of recording a lease of real property:
No conveyance, transfer, or mortgage of real property, or of any interest therein, nor any lease for a term of 1 year or longer, shall be good and effectual in law or equity against creditors or subsequent purchasers for a valuable consideration and without notice, unless the same be recorded according to law; nor shall any such instrument made or executed by virtue of any power of attorney be good or effectual in law or in equity against creditors or subsequent purchasers for a valuable consideration and without notice unless the power of attorney be recorded before the accruing of the right of such creditor or subsequent purchaser.
§ 695.01(1), Fla. Stat. (2006). Section 695.01(1) provides that a recorded lease "shall be good and effectual" against "subsequent purchasers for a valuable consideration." If narrowly construed, a lessee in a shopping center would not qualify as a "subsequent purchaser."
However, the supreme court has tacitly recognized a broader interpretation of section 695.01(1), one which means that Dolgencorp had constructive notice of the grocery exclusive sufficient to enforce the covenant against it. Stack v. Dunn, 444 So.2d 935 (Fla.1984), involved competing mineral rights leases for the same property. One lease was entered into in 1971, but not recorded until May 11, 1972. Id. at 936. The second lease was signed on January 17, 1972 and promptly filed with the clerk. Id. The supreme court applied section 695.01(1) to conclude that the failure to comply with the power of attorney provisions of the statute rendered one lease ineffectual against the other. Id. at 938. Implicit in this ruling is that recording of a lease could constitute constructive notice against a subsequent lessee.
Relying on Stack v. Dunn, we hold that a lessee of real property is a "purchaser" within the meaning of section 695.01(1). This interpretation is consistent with the view that a lease of land for a term of years "is a conveyance of an interest in land," "that passes a present interest in the land for the period specified." See Flowers v. Atl. Coast Line Ry. Co., 140 Fla. 805, 809, 192 So. 321, 323 (1939); De Vore v. Lee, 158 Fla. 608, 30 So.2d 924, 925 (1947) (quoting Chandler et al. v. Hart, 161 Cal. 405, 119 P. 516, 519 (1911), see Rogers v. Martin, 87 Fla. 204, 208, 99 So. 551, 552 (1924)) (stating that a leasehold estate "for all practical purposes is equivalent to absolute ownership"). This holding is also in accord with the sparse authority existing in other states. See Slice v. Carozza Props., Inc., 215 Md. 357, 137 A.2d 687, 688, 694 (1958); Reeve v. Hawke, 136 A.2d 196, 201 (Del.Ch.1957).

Section 542.335, Florida Statutes (1998) Does Not Invalidate Winn-Dixie's Real Property Covenant
We reject the circuit court's ruling that section 542.355 precludes enforcement of the restrictive covenant against Dolgencorp. First, by its terms, the statute does not apply to the Winn-Dixie/Crest Haven lease. Second, even if the statute were applicable, it does not apply to real property covenants running with the land.
Section 542.335(3) states: "This act shall apply prospectively, and it shall not *268 apply in actions determining the enforceability of restrictive covenants entered into before July 1, 1996." § 542.335(3), Fla. Stat. (1998). Winn-Dixie's grocery exclusive was executed on March 16, 1996 and the short form lease was recorded on April 23, 1996. By its terms, the statute does not apply to the restrictive covenant in this case.
In the circuit court, Dolgencorp focused on the wording of section 542.335(1)(a), which states that "[a] court shall not enforce a restrictive covenant unless it is set forth in a writing signed by the person against whom enforcement is sought." However, to correctly construe section 542.335(1)(a), we must read it in pari materia with the rest of the statute. See Maddox v. State, 923 So.2d 442, 445-46 (Fla.2006).
When read in context with the other provisions of section 542.335, subsection (1)(a)'s reference to "a restrictive covenant" does not include real property covenants running with the land. Rather, the section is directed at personal service contracts not to compete.
For example, section 542.335(1) refers to "contracts that restrict or prohibit competition" that "are reasonable in time." Subsections 542.335(1)(d) & (e) set out four rebuttable presumptions a court is to apply to determine the "reasonableness in time" of a "postterm restrictive covenant." "Postterm" connotes an employment relationship that has terminated, which is the time when one party seeks to enforce a covenant not to compete. "Postterm" is nonsensical when applied to a real property covenant, which typically does not have a stated termination point. Absent a specified term or materially changed conditions, a real property covenant running with the land is without duration. Citizens Nat'l Bank of Orlando v. Shell Oil Co., 232 So.2d 230, 231 (Fla. 4th DCA 1970). All four presumptions in subsections 542.335(1)(d) & (e) apply to personal service contracts, concerning restrictive covenants sought to be enforced (1) against a former employee, agent, or independent contractor; (2) against a former distributor, dealer, franchisee, or licensee of a trademark or service mark; (3) against a seller of all or part of a business, and (4) to protect trade secrets. None of these presumptions have any application to real property covenants that run with the land.
Additionally, section 542.335(1) imposes the requirement that an enforceable restrictive covenant be "reasonable in . . . area." As amici curiae[2] point out, such an area restraint does not apply to a real property covenant running with the land, which "is tied to specifically described real property, whether it be an entire subdivision, an adjacent lot, or a commercial development." Rather, the concept of geographical limitations makes sense only to define the area of performance of personal services covered under a covenant not to compete. A court should avoid a reading of the statute that would render a part of it meaningless. E.g., Unruh v. State, 669 So.2d 242, 245 (Fla. 1996).
Winn-Dixie demonstrates in its brief that nothing in the legislative history of section 542.335 indicates an intent to invalidate real property covenants. See Staff of Fla. Comm. On Judiciary, HB 611 & 375, Staff Analysis (May 30, 1996); Senate Staff Analysis and Economic Impact Statement, SB 282 & 1224 (Apr. 11, 1996). As Winn-Dixie explains, "[i]mposing requirements that real property covenants be in writing and signed by the person against whom enforcement is sought would be *269 nonsensical. Recorded leases and other real property covenants are already in writing, and the whole purpose of recorded covenants is to bind future, unknown successors to the burdened estate. Obviously, it would not be possible to obtain the signatures of future unknown persons when the instrument is signed."
In the circuit court, Dolgencorp relied heavily on Tusa v. Roffe, 791 So.2d 512 (Fla. 4th DCA 2001), but that case does not control, since it did not consider the issue raised in this case  whether section 542.335 applies to real property covenants running with the land.
In Tusa, tenant A had a provision in its lease saying that it was the only restaurant in the building that could sell pizza. Tenant B had a restriction in its lease prohibiting it from making or selling pizza. Id. at 513. There is no indication in Tusa that any of the leases were recorded or that the parties intended to create covenants running with the land. Tenant B began to sell pizza. Id. Tenant A sued Tenant B seeking injunctive relief as a third party beneficiary of Tenant B's lease. Id. at 514. We held that Tenant A could not sue to enforce the obligation in Tenant B's lease because Tenant A was not in "contractual privity" with Tenant B and Tenant B's lease did not identify Tenant A as a third party beneficiary. Id. We went on to state that "under section 542.335(f)(1)," Tenant A had "no viable claim" against Tenant B. Id.
Unlike this case, there was no claim in Tusa that the "pizza" use restriction was a real property covenant running with the land. Tenant A based its case on the legal theory that it was a third party beneficiary of a personal contract obligation in Tenant B's lease. Therefore, because no party in Tusa raised the issue, we did not rule on whether section 542.335 applied to real property covenants running with the land.
Reversed and remanded.
SHAHOOD and TAYLOR, JJ., concur.
NOTES
[1] The circuit did not resolve issues concerning the landlord in the order on appeal. The action against the landlord remains pending in the court below.
[2] Publix Super Markets, Inc. and Food Marketing Institute.